UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

| | | |
|---|---|---|
| IN THE MATTER OF THE EXTRADITION OF: | ) ) | |
| | ) | Case No. 1:08-mj-74 |
| ESET BILANOVIC | ) ) | |
| _____ | ) | Honorable Joseph G. Scoville |

**FINDINGS OF FACT, CONCLUSIONS OF LAW,
AND CERTIFICATION OF EXTRADITION**

This is an extradition proceeding brought under 18 U.S.C. § 3184 by the United States of America at the request of the government of Bosnia and Herzegovina (BiH), seeking the extradition of Eset Bilanovic.  The United States filed its complaint on August 14, 2008, for extradition pursuant to the Treaty Concerning Mutual Extradition of Law Breakers Between the United States and the Kingdom of Servia, effective June 12, 1902 ("the Extradition Treaty"). Attached to the complaint, among other items, was a request for extradition from the Ministry of Justice of BiH and a ten-page criminal judgment ("Verdict") of the Municipal Court of Bugojno, dated June 24, 1999, finding Eset Bilanovic guilty of murder.

Eset Bilanovic was arrested by the United States Marshal Service on October 30, 2008, and appeared before this court the next day, accompanied by retained counsel.  The court conducted an extradition hearing on November 6, 2008, receiving the testimony of Deputy United States Marshals Mark Hessler and Joseph Guzman, Government Exhibits 1a through 1d, and Defense Exhibits A, B, and C.  All in-court proceedings were translated into the Bosnian language for the benefit of Mr. Bilanovic.  After the hearing, the court allowed the government to supplement

the record by submission of the affidavit of Avril D. Haines, Assistant Legal Advisor for Treaty Affairs of the United States, concerning the continued existence and validity of the Extradition Treaty.  On the basis of the evidence now before the court, the court determines that all conditions for extradition have been satisfied and certifies Eset Bilanovic to the Secretary of State for her determination whether to surrender Mr. Bilanovic to the government of BiH.

### Findings of Fact

The person whose extradition is sought, Eset Bilanovic, is a citizen of BiH.  He was born in Korenici, the municipality of Donji Vakuf on September 23, 1962.  His father's name is Mustafa Bilanovic, and his mother's maiden name is Fija Sic.  His last place of residence in BiH was Kopcic, municipality of Bugojno.

On April 18, 1995, the District Military Prosecutor's Office in Travnik indicted Eset Bilanovic on the charge of murder under Article 36, paragraph 1 of the Criminal Code of the Republic of Bosnia and Herzegovina.  A district military court in Travnik conducted a trial, at which the accused and all proposed witnesses were heard.  The last hearing before that court was held on November 7, 1996.  At that point, the court postponed the proceedings for an indefinite period of time, ordering a psychiatric forensic examination of the accused as well as a surgical evaluation of each individual injury inflicted on the victim of the crime, Muharem Corhusic.  (Verdict, p. 2).  The accused then absconded.  The matter was transferred to the Municipal Court in Bugojno, where Bilanovic was charged with murder, in violation of Article 171(1) of the Criminal Code of the Federation of Bosnia and Herzegovina.  Trial was scheduled twice, but the accused failed to appear. On June 7, 1999, the Bugojno police department advised the court that the accused had left the

country and was believed to be in the United States of America.  The municipal court then ordered

the accused to be tried *in absentia*, as allowed by the Code of Criminal Procedure of BiH.  (Verdict,

pp. 2-3).  Appointed defense counsel did not object.  Relying on the testimony taken before the

District Military Court in Travnik, the municipal court in Bugojno issued its verdict on June 24,

1999, finding Eset Bilanovic guilty of the criminal offense of murder, contrary to Article 171, ¶ 1

of the Criminal Code of the Federation of Bosnia and Herzegovina.  The court sentenced Eset

Bilanovic to imprisonment for a term of nine years, with credit for time served pending trial.

(Verdict, p. 9).

   The verdict of the Municipal Court contained detailed factual findings to support the

conviction.  In summary, the court found that on February 9, 1995, around 7:40 p.m., in front of

Bilanovic's coffee bar in the City of Bugojno, Eset Bilanovic had a verbal altercation with Muharem

Corhusic and several of his friends.  Corhusic was a rowdy and sometimes violent patron of the

coffee shop.  This particular argument involved the purchase of a piece of plexiglass from Corhusic.

During the argument, Mr. Corhusic threw the plexiglass in the direction of Eset Bilanovic, and the

plexiglass broke.  Bilanovic then pulled a 7.65 mm pistol out of his belt and fired two shots at

Corhusic, hitting him in the region of the neck and head.  He approached Corhusic and from a

distance of one meter fired another shot into his head, inflicting a fatal injury.  The factual findings

contained in the court's verdict detailed the events leading up to the crime and an analysis of the

evidence in light of the elements of the offense under the law of BiH.  The court also considered and

rejected the defenses of diminished capacity and self-defense.  The court analyzed and rejected the

argument that the only crime committed was manslaughter, because of the period of delay between

any act of legal provocation and the shooting.  The court sentenced Eset Bilanovic to a period of

imprisonment for nine years, finding that this sentence "is adequate to the severity of the criminal offense committed and to the personality of the accused, and that the sentence shall have enough influence on him not to commit such or other criminal offenses." (Verdict, p. 9).

On February 27, 2006, the Minister of Justice of BiH, Slobodan Kovac, issued a diplomatic note requesting the extradition of Eset Bilanovic from the United States to BiH. Attached to the request were the verdict of the Municipal Court of Bugojno, the birth certificate and certificate of citizenship of Eset Bilanovic, a copy of Article 171 of the Criminal Code of BiH, and other supporting documents. The United States Attorney for this District filed a complaint on August 14, 2008, and Magistrate Judge Hugh W. Brenneman, Jr. issued a warrant of arrest. On October 30, 2008, Deputy United States Marshal Joseph Guzman, assisted by the Kentwood Police Department, arrested Eset Bilanovic without incident in a parking lot at 44th Street and Breton Road in Kentwood, Michigan. The person arrested admitted that his name was Eset Bilanovic. Mr. Bilanovic appeared before the court the next day, accompanied by Paul Denenfeld, retained counsel. The court conducted a status conference on November 5, 2008. During that conference, all parties agreed to the holding of an extradition hearing the next day, November 6, 2008.

At the extradition hearing, the court received the testimony of Deputies Hessler and Guzman, Government Exhibits 1a through 1d, and Defense Exhibits A, B, and C. Government Exhibit 1a is information from the Michigan State Police and the Secretary of State showing the driver's license information of the person before the court, Eset Bilanovic. These documents bear his photograph and show a date of birth of September 23, 1962. Government Exhibit 1b is an extract from the record kept by the Federal Bureau of Immigration and Customs Enforcement (ICE) for Eset Bilanovic, alien no. A075139022. The exhibit contains a picture of Eset Bilanovic, which is

-4-

identifiable as the person who appeared in court.  The ICE record indicates that Mr. Bilanovic's country of birth is Bosnia-Herzegovina and that his date of birth is September 23, 1962, the same birth date as the person who is wanted for extradition.  Government Exhibit 1c is also an ICE record, relating to the alien named Eset Bilanovic with alien no. A75139022.  This record shows September 23, 1962, as Mr. Bilanovic's date of birth and identifies his father as Mustafa and his mother as Fija. Government Exhibit 1d is an Interpol request for arrest of Eset Bilanovic, born September 23, 1962, in Korenici, municipality of Donji Vakuf, identifying the father of the wanted person as Mustafa Bilanovic and the mother as Fija Sic.

The person who is wanted by BiH for extradition and the person who appeared before the court have identical names, dates of birth, places of birth, father's name and mother's name.  On this basis, the court finds as a fact that the Eset Bilanovic who is in custody and appeared before this court is the same Eset Bilanovic who is wanted for extradition to BiH.

## Extradition Treaty

The treaty upon which the United States relies is the Treaty Concerning Mutual Extradition of Law Breakers Between the United States and the Kingdom of Servia (then the common spelling of Serbia) signed October 25, 1901, in Belgrade.  The United States Senate gave advice and consent to ratification on January 27, 1902, and President Theodore Roosevelt ratified the treaty on March 7, 1902.  Servia ratified the treaty on March 17, 1902, and the treaty entered into force on June 12, 1902, thirty days after the parties exchanged instruments of ratification.  (Haines Aff., docket # 10-2, ¶ 3).

The Extradition Treaty requires the contracting parties to deliver up persons "charged with or convicted of any of the crimes and offenses specified [in Article II] committed within the jurisdiction of one of the high contracting parties." (Art. I). Extradition is conditioned upon the production of "such evidence of criminality as, according to the laws of the place where the fugitive or person so charged shall be found, would justify his or her apprehension and committal for trial if the crime or offense had been committed there." (Art. I). The extradition treaty contains a list of extraditable offenses, including the following:

1.      Murder, comprehending assassination, parricide, infanticide, and poisoning; attempt to commit murder; manslaughter, when voluntary.

(Art. II). If the person whose extradition is sought has been convicted of a crime, the treaty requires production of a duly authenticated copy of the sentence of the court in which the person has been convicted. (Art. III). The extradition treaty excludes from extradition political offenses (Art. XI) and charges barred by the statute of limitations of the rendering country. (Art. VII).

The Kingdom of Servia, one of the contracting parties, became a part of the Kingdom of Serbs, Croats and Slovenes in 1918, as a consequence of World War I. The country was renamed Yugoslavia in 1929 and was subsequently renamed the Federal People's Republic of Yugoslavia in 1946, when a communist government took power. (Haines Aff., ¶ 4). In 1963, the country was again renamed, calling itself the Socialist Federal Republic of Yugoslavia (SFRY). The SFRY consisted of six constituent republics: SR Slovinia, SR Croatia, SR Serbia, SR Bosnia-Herzegovina, SR Montenegro, and SR Macedonia. Beginning in 1991, the SFRY began to disintegrate as the result of the civil wars which followed the secession of most of the country's constituent entities. The Republic of Bosnia-Herzegovina declared its independence from Yugoslavia in 1992. The

-6-

United States recognized BiH as an independent state and established diplomatic relations the same year. (Haines Aff., ¶¶ 6-7). In connection with the recognition of BiH, its President, Alija Izetbegovic, informed the United States Secretary of State by letter dated April 19, 1992, that "Bosnia is ready to fulfill the treaty and other obligations of the former SFRY." (Haines Aff., ¶ 7). Since that time, BiH has requested the extradition of at least three other persons pursuant to the 1902 extradition treaty, and the Executive Branch of the United States government has continued to honor the extradition treaty. (Haines Aff., ¶¶ 7-8). There is no evidence that either the United States or the government of BiH has ever repudiated the extradition treaty.[1]

## Conclusions of Law

### A.       Requirements for Extradition

Under 18 U.S.C. § 3184, a person facing possible extradition to a foreign country is entitled to a hearing before a United States judge or magistrate judge. To justify extradition, the United States must establish that (1) a valid extradition treaty exists between the United States and the country requesting extradition; (2) the treaty provides for extradition for the crime charged; (3) the evidence supporting the extradition complaint conforms to the applicable standards established by the treaty and the laws of the United States; and (4) the evidence supports a finding of probable cause to believe that the charged crime has been committed and that the person to be extradited is the person who committed it. 18 U.S.C. §§ 3184, 3190; *see In re Extradition of Rodriguez Ortiz*,

---

[1] Counsel for Mr. Bilanovic offered newspaper accounts concerning a controversy involving a Serbian basketball player wanted for crimes allegedly committed in the United States. (Def. Ex. B). Taken at face value, these newspaper accounts tend to indicate that *Serbian* officials do not recognize the existence of an extradition treaty with the United States. Serbia and BiH have been separate countries since 1992. The position of the Serbian government concerning the existence of an extradition treaty is therefore irrelevant to an extradition involving BiH.

444 F. Supp. 2d 876, 881-82 (N.D. Ill. 2006).  The government must also show that the fugitive has

not established, by a preponderance of the evidence, any valid defense to the extradition (as opposed

to a defense to the crime).  *See In re Extradition of Harusha*, No. 07-X-51072, 2008 WL 1701428

at * 2 (E.D. Mich. Apr. 9, 2008).  Such defenses to extradition include the assertion that the crime

for which the person is accused is political in nature, *see, e.g., Barapind v. Enomoto*, 360 F.3d 1061,

1073 (9th Cir. 2004), or that extradition would violate the applicable statute of limitations.

        Extradition is an executive rather than a judicial function.  *Hoxha v. Levi*, 465 F.3d

554, 560 (3d Cir. 2006); *see Ordinola v. Hackman*, 458 F.3d 588, 606 (4th Cir. 2007).  For this

reason, an extradition court may conduct only a limited inquiry.  "An extradition proceeding is not

a forum in which to establish [ ] the guilt or innocence of the accused; rather, the sole inquiry is into

probable cause."  *In re Extradition of Drayer*, 190 F.3d 410, 415 (6th Cir. 1999).  The evidence upon

which the court relies must be properly authenticated by a diplomatic official of the State Department

resident in the requesting country, as required by 18 U.S.C. § 3190.  If properly authenticated,

evidence may be received in an extradition proceeding that would be inadmissible in a preliminary

examination.  *Demjanjuk v. Petrovsky*, 776 F.2d 571, 576 (6th Cir. 1985).  The court's determination

may rest on hearsay in whole or in part.  *See Collins v. Loisel*, 259 U.S. 309, 317 (1922); *O'Brien

v. Rozman*, 554 F.2d 780, 783 (6th Cir. 1977).  Therefore, the court's findings may be made

completely on documentary evidence.  *See, e.g., Bingham v. Bradley*, 241 U.S. 511, 517 (1916);

*O'Brien*, 554 F.2d at 783.

        If all requirements for extradition, including the existence of probable cause, are

satisfied, the judge then makes a finding of extraditability, and the case is certified to the Secretary

of State for further action.  After the court has completed its limited inquiry, the Secretary of State

-8-

conducts an independent review of the case to determine whether to issue a warrant of surrender. *See Martin v. Warden, Atlanta Penitentiary*, 993 F.2d 824, 829 (11th Cir. 1993). "The Secretary exercises broad discretion that may properly consider myriad factors affecting both the individual defendant as well as foreign relations, which the extradition court may not." *Id.*

### B.     Conclusions of Law

#### 1.     Jurisdiction

This court has subject-matter jurisdiction pursuant to 18 U.S.C. § 3184. Magistrate judges of this court are authorized by local rule to conduct extradition proceedings pursuant to 18 U.S.C. § 3184. W.D. Mich. LCrimR 57.2(c)(xiv). Personal jurisdiction exists because Mr. Bilanovic was arrested in this district. *See In re Extradition of Rodriguez Ortiz*, 444 F. Supp. 2d at 885.

#### 2.     Existence of Extradition Treaty

With one narrow exception not applicable here, the Extradition Act requires the existence of a "treaty or convention for extradition" between the United States and a foreign country as a prerequisite to extradition. 18 U.S.C. § 3184; *see Factor v. Laubenheimer*, 290 U.S. 276, 287 (1933). Mr. Bilanovic strenuously asserts that no valid treaty exists between the United States and BiH. The court rejects this argument and concludes that the 1902 Extradition Treaty remains in effect.

Under the doctrine of "state succession," a successor state may be bound by the treaty obligations of a prior state. This can occur in a number of factual circumstances, such as the gaining of independence by a former colony. *See, e.g., Sabatier v. Dabrowski*, 586 F.2d 866, 868 (1st Cir.

1978) (Canada succeeded to Webster-Ashburton Treaty between Great Britain and United States signed in 1842, before independence). The State Succession Doctrine, however, is not limited to former colonies. The rule applicable to the present case is enunciated by the Restatement of Foreign Relations Law as follows:

> (3)    When part of a state becomes a new state, the new state does not succeed to the international agreements to which the predecessor state was party, unless, expressly or by implication, it accepts such agreements and the other party or parties thereto agree or acquiesce.

RESTATEMENT (THIRD) OF FOREIGN RELATIONS LAWS OF THE UNITED STATES § 210(3) (hereafter "Restatement"). The Restatement position, which is based on the Vienna Convention on Succession of States in Respect to Treaties (1978), adopts the "clean slate" theory, under which a new state starts afresh, with neither rights nor obligations under the agreements of its predecessor state, unless the new state assumes some or all of the agreements of the prior state, either expressly or by implication. RESTATEMENT § 210 com. f. The same rule applies to both former colonies and to states, like BiH, arising from secession or other separation: the new state is not bound by treaties of the prior state unless it and the other contracting party accept the treaty expressly or by implication. RESTATEMENT § 210 rpt. note 4.

A court's role in reviewing this issue is severely circumscribed by concepts of separation of powers. The determination whether a treaty applies by the doctrine of state succession is essentially an Executive Branch decision. *See* M. CHERIF BASSIOUNI, INTERNATIONAL EXTRADITION 161 (5th ed. 2007). This authority derives from Article II, § 2 of the United States Constitution, which confers the treaty-making power on the President, with the advice and consent of the Senate. *See Valentine v. United States ex rel. Neidecker*, 299 U.S. 5 (1936). The scope of

judicial inquiry is therefore limited to the position of the Executive Branch on the question of state succession, but also may include evidence of the foreign government's position on the same issue. *See Kastnerova v. United States*, 365 F.3d 980, 986 (11th Cir. 2004). In other words, the court is to examine conduct indicating an intent to be bound by the Executive Branches of each nation. The fact that a country has invoked an extradition treaty in the case at bar is evidence of its implied adoption of the treaty. *See Hoxha v. Levi*, 465 F.3d 554, 562 (3d Cir. 2006).

Because extradition is essentially a political question, the position of the Executive Branch is entitled to considerable deference, if not dispositive weight. *See Damanjuk*, 776 F.2d at 579. Therefore, in determining whether a treaty is still in existence, the federal courts generally "defer to the intentions of the State Departments of the two countries." *Then v. Melendez*, 92 F.3d 851, 854 (9th Cir. 1996). One court of appeals has remarked that every circuit court reviewing an extradition decision has deferred to the opinion of the United States Department of State in determining whether a treaty remained binding under the State Succession Doctrine. *Kastnerova*, 365 F.3d at 986 (collecting cases).

The evidence before the court, as summarized in the "Extradition Treaty" section of this opinion, clearly demonstrates that both the United States and BiH continue to honor the 1902 Extradition Treaty, at least by implication. In the 100-year period following adoption of the Extradition Treaty, there is a clear line of sovereignty between the Kingdom of Servia and the present government of BiH. In *Ivancevik v. Artukovic*, 211 F.2d 565 (9th Cir. 1954), the Ninth Circuit determined that the 1902 Extradition Treaty was sufficient legal basis for extradition to the then nation of Yugoslavia. Although the sovereignty of Yugoslavia had changed several times since 1902, the court considered it "conclusive" that the government of Yugoslavia continued to act under

-11-

the treaties of the prior nation.  211 F.2d at 573.  More recently, two district courts have certified

extraditions to the present nation of Bosnia-Herzegovina on the basis of the 1902 Extradition Treaty.

*See United States v. Avdic*, No. CR 07-M06, 2007 WL 1875778 (D.S.D. June 28, 2007); *In re*

*Extradition of Sacirbegovic*, No. 03 CR Misc. 01, 2005 WL 107094 (S.D.N.Y. Jan. 19, 2005).  The

*Sacirbegovic* opinion contains an extended discussion of the State Succession Doctrine, concluding

that the conduct of both the United States and BiH was sufficient to show adoption of the 1902

Extradition Treaty by implication.  2005 WL 107094, at * 10-11.  No court has held otherwise.

       The facts set forth in the affidavit of Avril D. Haines, Assistant Legal Advisor for

Treaty Affairs of the United States, as bolstered by the findings of the court in the *Sacirbegovic* case,

are more than sufficient to support a finding that the 1902 Extradition Treaty remains in effect

between the United States and BiH.  In opposition to this conclusion, Mr. Bilanovic raises only

insubstantial arguments.  First, he points to the official listing of the United States Department of

State of treaties in force.  (Def. Ex. A).  That document lists treaties between BiH and the United

States signed after the United States recognized BiH as an independent state in 1992.  For

agreements entered into before that date, the document refers the reader to the heading "Yugoslavia."

The listing for Yugoslavia identifies a number of treaties, including the 1902 Extradition Treaty.

The introduction indicates that the status of these treaties is "under review."  This general statement

is insufficient to overcome the specific evidence of mutual acceptance of the Extradition Treaty by

both countries, as set forth in the Haines affidavit.

       Second, Mr. Bilanovic points to the apparent refusal of Serbia to recognize the 1902

Extradition Treaty.  As noted above, the position of Serbia, an independent nation, on this issue is

irrelevant.  Under the prevailing view, as reflected in both the Restatement and the 1978 Vienna

Convention, a new state has the option of accepting or rejecting the obligations of the prior state. Hence, some of the former Yugoslavian states may accept the Extradition Treaty, while others may not.

Finally, Mr. Bilanovic's attorneys have filed a brief (docket # 12) addressed to the continuing existence of the 1902 Extradition Treaty. The brief argues that the conduct of the United States and BiH is too vague to constitute acceptance by implication within the meaning of section 210 of the Restatement or the Vienna Convention on Succession of States. The second argument is that the modern state of BiH is a completely different political entity than any of the former states, including the SFRY. These arguments suffer from three substantial flaws. First, no court has ever accepted these arguments. In fact, those district courts that have examined the continued existence of the 1902 Extradition Treaty have found that the United States and BiH have adopted the treaty by implication. Second, the State Succession Doctrine is not limited to new governments but extends to "new states" as well. *See Kastnerova*, 365 F.3d at 986 (holding that the conduct of the United States and the Czech Republic showed their intent to adhere to a 1925 extradition treaty between the United States and Czechoslovakia); RESTATEMENT § 210(3). Consequently, the distinction that Mr. Bilanovic relies upon is no longer accepted in modern extradition law. Finally, and most basically, these arguments invite the court to overrule the judgment of the Department of State on this political question. The conclusion of the Department of State is well supported and is entitled to deference by the courts. The "question whether power remains in a foreign state to carry out its treaty obligations is in its nature political and not judicial, and . . . the courts ought not to interfere with the conclusions of the political department in that regard." *Terlinden v. Ames*, 184

U.S. 270, 288 (1902) (considering the validity of the 1852 Extradition Treaty between the United States and Prussia).

"Whether a treaty remains valid following a change in the status of one of the signatories is a political question, and we therefore defer to the views of each nation's executive branch.  The intent and conduct of the relevant governments is the critical factor."  *Hoxha v. Levi*, 465 F.3d at 562 (citations omitted).  The evidence before the court clearly establishes that the state departments of both the United States and BiH continue to honor the 1902 Extradition Treaty.  The court therefore concludes that a valid treaty of extradition exists.

3.      Treaty Authorization of Extradition for Crime Charged

The next prerequisite to extradition is a finding that the treaty authorizes extradition for the crime charged.  In the present case, the 1902 Extradition Treaty specifically identifies murder as an offense for which extradition shall be granted.  (Art. II(1)).  Further, the treaty applies both to persons who have been charged with an enumerated offense and those persons who have been "convicted" of any such crime.  (Art. I).

Included within this inquiry is the requirement of "dual criminality."  That is, a fugitive is subject to extradition only if the acts charged are criminal under the laws of both countries.  *Collins*, 259 U.S. at 311; *Damanjuk*, 776 F.2d at 579.  This rule does not require that the name by which the crime is described in the two countries must be the same, or that the scope of liability must be coextensive in each country.  "It is enough if the particular act charged is criminal in both jurisdictions."  *Collins*, 259 U.S. at 312.  The 1902 Extradition Treaty specifically embodies the concept of dual criminality in the last sentence of Article II.  This requirement is easily satisfied

-14-

in the present case.  "Murder is a crime in every state of the United States." *Damanjuk*, 776 F.2d at 580; *see, e.g.,* MICH. COMP. LAWS § 750.317.  Certain murders are also proscribed by federal law. 18 U.S.C. § 1111.  Furthermore, the killing for which Mr. Bilanovic was convicted cannot possibly be deemed a "political offense," nor has he raised this defense to extradition.

The court therefore concludes that the provisions of the 1902 Extradition Treaty provide for extradition for the crime charged.

4.   <u>Authenticated Evidence</u>

To justify extradition, the government must support the extradition complaint with evidence conforming to the applicable standards declared by law.  Those standards are supplied by the Extradition Act, 18 U.S.C. § 3190, which establishes the criteria for authenticating depositions, warrants, and other papers offered in evidence in an extradition hearing.  The statute requires that such documents be "properly and legally authenticated so as to entitle them to be received for similar purposes by the tribunals of the foreign country from which the accused party shall have escaped." The statute goes on to provide that a certificate from the principal diplomatic or consular office of the United States resident in the foreign country "shall be proof that the same, so offered, are authenticated in the manner required."   In the present case, the Verdict and other documents supporting the extradition request of BiH are accompanied by a certificate from Douglas L. McElhaney, then the Ambassador of the United States of America in Sarajevo, Bosnia and Herzegovina.  Ambassador McElhaney's certificate avers that the attached documents "are properly and legally authenticated so as to entitle them to be received in evidence for similar purposes of the

-15-

Tribunals of Bosnia and Herzegovina, as required by Title 18, United States Code, § 3190." The Ambassador's certification satisfies the requirements of the Extradition Act.

In addition to satisfying the requirements of statute, the government is obliged to comply with any requirements of the treaty. Article III of the 1902 Extradition Treaty requires, in the case of a person convicted of a crime or offense, presentation of "a duly authenticated copy of the sentence of the Court in which he has been convicted." The United States has satisfied this requirement of the Treaty by presenting to this court an authenticated copy of the Verdict of the Municipal Court in Bugojno, as well as a certified translation of the Verdict.

### 5.   Probable Cause Determination

The paramount issue of every extradition proceeding is the existence of probable cause. *Drayer*, 190 F.3d at 415. "The function of the committing magistrate is to determine whether there is competent evidence to justify holding the accused to await trial, and not to determine whether the evidence is sufficient to justify a conviction." *Collins*, 259 U.S. at 316. "The probable cause standard applicable to an extradition hearing is the same as the standard used in federal preliminary hearings." *Hoxha*, 465 F.3d at 561. The government must satisfy the probable cause standard on the question of identity as well as the sufficiency of the evidence.

(a)   Identity

The documentary evidence before the court establishes probable cause that the Eset Bilanovic now in this court's custody is the same Eset Bilanovic wanted for extradition to BiH. Four pieces of documentary evidence identify the person who is wanted for extradition as Eset Bilanovic, son of Mustafa Bilanovic and Fija Sic, born on September 23, 1962, in Korenici in the then

Yugoslavia.  These are the Verdict of the Municipal Court in Bugojno dated June 24, 1999, the birth certificate of Eset Bilanovic, the Certificate of Citizenship of Eset Bilanovic, and the Interpol request for arrest (Gov. Ex. 1d).  Four items of documentary evidence pertaining to the person before the court establish the same name and date of birth.  (Gov. Ex. 1a, 1b, 1c, 1d).  One identifies him as having been born in Bosnia-Herzegovina (Gov. Ex. 1b) and one identifies his father as Mustafa and his mother as Fija (Gov. Ex. 1c).

The person who is wanted by BiH for extradition and the person who appeared before the court have identical names, dates of birth, places of birth, father's name and mother's name.  This is sufficient to establish probable cause on the issue of identity.  Counsel for Mr. Bilanovic nevertheless argues that the probable cause standard has not been met, because the government did not present fingerprints, DNA, photographs, or other physical evidence from BiH to establish identity.  Such physical evidence, although desirable, is not necessary.  Photographs and fingerprints, if available, could prove identity beyond a reasonable doubt.  This is not a criminal proceeding, however, and the reasonable doubt standard does not apply.  Although identical names and dates of birth might not be sufficient to meet the probable cause standard, the fact that the parents' names are also identical is compelling and removes any reasonable suspicion of coincidence.

(b)     Evidence of Criminality

The evidence before the court is sufficient to establish probable cause to support the charge of murder.  The evidence of probable cause is contained completely in the Verdict of the Municipal Court of Bugojno, appended to the extradition complaint.  For the reasons set forth below, the Municipal Court's summary of evidence is more than sufficient to establish probable cause.

A foreign conviction entered after a trial at which the defendant was present suffices, in and of itself, to establish probable cause.  *See Spatola v. United States*, 925 F.2d 615, 618 (2d Cir. 1991); RESTATEMENT § 476 cmt. b ("With respect to persons whose extradition is sought after conviction in the requesting state, the [probable cause] requirement is met by proof of the judgment of conviction and, where applicable, of sentence.").  In such cases, the extradition court need not make an independent assessment of the facts surrounding the offense and may rely solely on a certified copy of the foreign conviction.  *Spatola*, 925 F.2d at 618.  This rule applies in those cases where the person sought was present at the commencement of criminal proceedings but fled before the proceedings concluded.  RESTATEMENT § 475 cmt. h.  It is at least arguable that the verdict of the Municipal Court of Bugojno provides sufficient proof of probable cause in the present case, as Mr. Bilanovic was present (and indeed testified) at the commencement of proceedings before the District Military Court in Travnik but absconded before proceedings were transferred to the Municipal Court in Bugojno.

If the trial before the Municipal Court is deemed a trial *in absentia*, the Verdict, standing alone, is insufficient to establish probable cause.  The general rule in this country is that when the foreign conviction is *in absentia*, the fact of the judgment, standing alone, is insufficient to establish probable cause.  *See Argento v. Horn*, 241 F.2d 258, 259 n.1 (6th Cir. 1957).  In such cases, the government is required to present proofs from which the extradition court can make an independent assessment of whether probable cause exists.  *Id.*; *see Gallina v. Fraser*, 278 F.2d 77, 78-79 (2d Cir. 1960).  The Fourth Circuit has squarely held, however, that detailed findings in a criminal judgment following a trial conducted *in absentia* will suffice to establish probable cause:

-18-

Even assuming that the fact of an *in absentia* conviction by itself is an insufficient basis *per se* for a finding of probable cause, the government presented more than just the fact of conviction. As detailed previously, the excerpts from the appellate opinion go well beyond the mere verdict, summarizing the underlying evidence amassed against Haxhiaj and his co-conspirators. We have found nothing in the body of extradition law to suggest that such independent evidence of probable cause must be the kind of "actual evidence" Haxhiaj is seeking.

* * * *

We conclude that the evidentiary summary contained within the opinion of the Court of Appeal of Milan is within the scope of evidence that the extradition court may consider in making its limited preliminary decision under § 3184.

*Haxhiaj v. Hackman*, 528 F.3d 282, 291-92 (4th Cir. 2008). In such circumstances, the judicial findings are at least as persuasive as facts set forth in a prosecutor's affidavit, which is generally not supported by sworn testimony.

The facts set forth in the Verdict of the Municipal Court clearly establish the presence of probable cause to believe that Eset Bilanovic is guilty of the murder of Muharem Corhusic on February 9, 1995. Under American law, murder is generally defined as the unlawful killing of a human being with malice aforethought. *See, e.g.*, 18 U.S.C. § 1111(a). According to the Verdict of the Municipal Court, a violation of Article 171(1) of the Criminal Code of Bosnia and Herzegovina is established by proof that the defendant deprived another person of his life with "direct intent" to do so. The Municipal Court summarized the crux of the evidence against the accused as follows:

On 9 February 1995, around 19:40 in front of Fantazija Coffee Bar in Bugojno on B. Jedinstva Street, a verbal conflict between Bilanovic Eset and Corhusic Muharem occurred over the purchase of a piece of plexiglas, after which Corhusic threw the plexiglas in the direction of Bilanovic and the plexiglas broke in the immediate vicinity of Bilanovic. Then Bilanovic pulled the pistol out of his belt, the CZ 7.65 mm pistol, No. 202520, which he immediately before that cocked in the coffee bar, fired two shots at Corhusic and hit him in the region fo the neck and head. Then he

-19-

approached Corhusic and from a distance of one meter fired another shot in his head inflicting serious injuries of the vital parts of his head and spine and bleeding out. Due to these injuries he died on the spot.

(Verdict, p. 1). The Verdict contained multiple pages of detailed findings of the events leading up to the killing, including an altercation between Bilanovic and Corhusic concerning a plexiglass window that Corhusic was attempting to sell to Bilanovic. During the argument, Bilanovic told Corhusic to take the glass out of his coffee bar, as he had no space for it. (*Id.*, p. 6). During the argument, Bilanovic took out a pistol, inserted a bullet, cocked the pistol, and put it back behind his belt. He then left the coffee bar and confronted Corhusic and his friends. The argument continued outside the coffee bar, and Muharem Corhusic took the piece of plexiglass and threw it in the direction of Bilanovic, while threatening and cursing him. "After he threw the windowpane in the direction of the accused, Corhusic Muharem moved towards the accused, and the accused takes his pistol out of his belt, fires two shots to Corhusic Muharem. When Corhusic fell down on the ground, the accused comes to him and from the immediate vicinity fires another shot to Corhusic. . . . During the proceedings, it has been established that it was 3 pistol shots in total and all of them hit Corhusic Muharem." (Verdict, p. 6). Bilanovic thereafter went to the police station, admitted his commission of the crime, and surrendered his pistol to the police. (Verdict, p. 7). The Municipal Court rejected the claim of self-defense, because Bilanovic followed the other men out of the coffee bar with a loaded and cocked pistol and therefore was the aggressor. (Verdict, pp. 7-8).

The findings of the Municipal Court of Bugojno, which were based upon sworn testimony by Mr. Bilanovic and other eye witnesses taken by the District Military Court in Travnik, are sufficient to establish probable cause that Eset Bilanovic murdered Muharem Corhusic on February 9, 1995. At the extradition hearing, counsel for Mr. Bilanovic did not attempt to undermine

directly the findings of the Municipal Court.  Rather, counsel raised a number of procedural objections to the proceedings in BiH, arguing that these alleged irregularities undermined the reliability of the Municipal Court Verdict.  Mr. Bilanovic argues, for example, that the Military Tribunal adjourned the trial without date so that a forensic psychiatric evaluation could be obtained. The Municipal Court, however, proceeded with the trial three years later without obtaining the forensic evaluation.  He also argues that the Municipal Court proceeded with a trial *in absentia*, even though the court was well aware that the defendant was in the United States.  He also asserts that his appointed counsel in the Municipal Court was ineffective, as counsel did not object to the trial *in absentia* and did not subject witnesses to cross-examination.

Mr. Bilanovic's challenge to the procedural regularity of the Municipal Court proceedings in BiH violates the rule of non-inquiry.  "Under the rule of non-inquiry, courts refrain from investigating the fairness of the requesting nation's justice system, and from inquiring into the procedures or treatment which await a surrendered fugitive in the requesting country." *United States v. Kin-Hong*, 110 F.3d 103, 110 (1st Cir. 1997); *see generally Munaf v. Geren*, 128 S. Ct. 2207, 2222-23 (2008).  This principle serves interests of international comity by "relegating to political actors the sensitive foreign policy judgments that are often involved in the question of whether to refuse an extradition request." *Hoxha*, 465 F.3d at 563.  The extradition court has no authority to inquire into matters other than the facial validity of the extradition documents. *In re Extradition of Gonzales*, 217 F. Supp. 717, 722 n.15 (S.D.N.Y. 1963).  This court has no authority to inquire into the procedural regularity of the judicial proceedings of the requesting country, nor can it insist that the requesting country follow the dictates of American law. *Basso v. United States Marshal*, 278 F. App'x 886, 887 (11th Cir. 2008) (Under the rule of non-inquiry, the extradition magistrate is

precluded from "assessing the investigative, judicial, and penal systems" of the requesting nation.).

"Questions about the legitimacy and procedural fairness of the [requesting country's] justice system are for the Executive Branch, not the courts, to ponder in determining whether to exercise its discretion to grant an extradition request." *Haxhaij*, 528 F.3d at 291 n.2.  Mr. Bilanovic's criticisms of the procedures employed by the Municipal Court in BiH do not provide a defense to extradition, nor do they undermine the findings of the Municipal Court.

If the extradition court finds "reasonable ground to suppose [the fugitive] guilty as to make it proper that he should be tried, good faith to the demanding government requires his surrender." *Gluksman v. Hankel*, 221 U.S. 508, 512 (1910).  In the present case, the findings of the Municipal Court of Bugojno amply satisfy the probable cause standard.

## Certification

For the foregoing reasons, this court CERTIFIES that Eset Bilanovic is subject to extradition and refers this matter to the United States Secretary of State for her determination whether to surrender Mr. Bilanovic to authorities in Bosnia-Herzegovina.  The court further ORDERS that Eset Bilanovic remain in the custody of the United States Marshal Service pending the determination by the Secretary of State whether to grant the request for extradition by Bosnia-Herzegovina.

Dated:   December 3, 2008                       /s/  Joseph G. Scoville
                                                United States Magistrate Judge

-22-